UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STAY@HOME DESIGN LLC, BRIAN ROBINSON, JANET ROBINSON, NED CANNON, and MAURA CANNON,

    Plaintiffs,

v.

FOREMOST INSURANCE COMPANY GRAND RAPIDS, MICHIGAN, a foreign insurance company doing business in the State of Washington,

    Defendant.

CASE NO. C16-1673-MAT

ORDER RE: LCR 37 JOINT SUBMISSION

INTRODUCTION

This case involves insurance coverage and bad faith claims brought by plaintiffs Stay@Home Design LLC, Brian and Janet Robinson, and Ned and Maura Cannon against defendant Foremost Insurance Company Grand Rapids, Michigan ("Foremost"). After conducting an investigation with the assistance of attorneys at Lether & Associates, PLLC ("Lether"), Foremost denied coverage for claims related to vandalism that occurred at a house owned by plaintiffs.

The parties now seek cross-relief under Local Civil Rule 37(a)(2). (Dkt. 16.) Foremost

ORDER
PAGE - 1

requests the entry of a protective order related to documents withheld on the basis of attorney-client privilege and the work product doctrine. Plaintiffs contend the documents are not privileged or protected, and request that the Court compel their production. Both parties alternatively request an *in camera* review of the documents at issue. Having now considered the joint submission for relief, along with the remainder of the record, the Court finds some documents not subject to production and reserves a ruling as to the remaining documents pending an *in camera* review.

## BACKGROUND

Plaintiffs operate a business "flipping" houses for profit. (*See* Dkt. 17 at 6-12 (Ex. 1).) On September 24, 2015, after viewing a photograph from a prior listing and the location on a map, plaintiffs purchased the house at issue in this lawsuit at a foreclosure auction. (*Id*. at 10-14.)

Plaintiffs initially purchased an insurance policy with Allstate. Allstate inspected the exterior of the property on September 30, 2015 and identified items to repair by November 2, 2015. (Dkt. 18-1 at 45-48 (Ex. E).) The repair items included a broken front door lock, the absence of a rear deck railing, moss on the roof, holes in the siding, a boarded-up front window, debris, trash, and discarded appliances in the back yard, and trees over-hanging the roof. (Dkt. 17 at 23 (Ex. 2).) Plaintiffs thereafter took out a policy on the property with Foremost, through an application dated October 30, 2015 and with an effective date of November 2, 2015. (*Id*. at 24-29 (Ex. 3).)

The house was occupied by tenants at the time of purchase. On December 1, 2015, following removal of the tenants through eviction proceedings, plaintiffs entered the house for the first time. (Dkt. 18-1 at 29-34 (Ex. E).) Plaintiffs observed that the interior of the house had been gutted, including the removal of the interior walls, framing, and fixtures, the back deck torn from the house, and the backyard covered in debris from the gutted house. (*Id*. at 34-40).

Plaintiffs filed a claim with Foremost in early December 2015 for vandalism damage

ORDER
PAGE - 2

occurring sometime after November 2015 and totaling approximately $185,000. (Dkt. 17 at 30-32 (Ex. 4).) Foremost retained Lether and the claim investigation commenced, including Lether's examinations under oath ("EUO") of plaintiffs (*see*, *e.g.*, Dkt. 18-1 at 28-59 (Ex. E)), and Foremost's conversation with Marketa Garrett, a former tenant of the house (Dkt. 17 at 33 (Ex. 5)). Plaintiffs' original counsel first raised the possibility of an Insurance Fair Conduct Act (IFCA) claim in a February 2016 email to Lether, and plaintiffs submitted their IFCA twenty-day written notice later that month. (*Id*. at 34-38 (Exs. 6-7).)

Foremost denied plaintiffs' claim in April 2016, concluding they failed to establish the loss occurred during the policy period beginning November 2, 2015. (Dkt. 18-3 at 2-4 (Ex. G).) Foremost noted plaintiffs' testimony they did not enter the property until December 1, 2015 and that Garrett indicated the damage to the property began approximately a year prior to the Foremost policy inception date and ended prior to that date. (*Id*. at 3.) (*See also* Dkt. 17 at 33 (Ex. 5) (notes from Garrett conversation reflect her report the former owner began to take down interior walls nine months to a year prior to the eviction, either to convert the house for use as a marijuana "grow house operation and or remodel[,]" that "the last wall probably came down in the middle of October [2015]", and that the damage occurred before the month or two preceding the eviction).) Foremost found plaintiffs misrepresented the extent of the loss by including pre-existing damage, misrepresented communications with Allstate and attempted to conceal material and germane information, and misrepresented information on the policy application by stating they had not had a policy cancelled, denied, or not renewed within the past five years. (Dkt. 18-3 at 3-4 (Ex. G).)

Counsel for plaintiffs responded to the denial with a description of evidence supporting their contention the damage occurred during the policy period. (*Id*. at 17-18.) For example, between September and November 2015, looking through the front door and windows and from

photographs of the backyard, plaintiffs and others observed that the house was intact and the backyard contained limited debris. (*Id*.; Dkt. 18-1 at 28 through Dkt. 18-4 at 29 (Exs. E-K).) Plaintiffs also challenged the alleged misrepresentations, noting, *inter alia*, their prompt corrections to mistaken testimony and the accuracy of their application answer given that Allstate had not cancelled their policy prior to the purchase of the Foremost policy. (Dkt. 18-1 at 18-21 (Ex. G).) Plaintiffs' current counsel submitted another IFCA claim in August 2016 (Dkt. 17 at 39-42 (Ex. 8)), and plaintiffs initiated this lawsuit the following month (Dkt. 1-1).

Foremost states it produced some 4,500 pages of discovery, including its claim file and related documents and the claim file from Lether, with the exception of documents withheld on the basis of attorney-client privilege and/or as work product. (Dkt. 18-1 at 17-25 (Exs. B & C).) Plaintiffs herein seek production of 113 out of the 123 documents withheld from discovery (*see id*. and Dkt. 16 at 3), while Foremost seeks a protective order relating to those same documents.

## DISCUSSION

The Court may issue a protective order limiting discovery for good cause shown. Fed. R. Civ. P. 26(c)(1). The party seeking the protective order must show that "specific prejudice or harm will result if no protective order is granted." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) (cited sources omitted). The Court has broad discretion to determine whether a protective order is appropriate and the degree of protection required. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). The Court may likewise, where appropriate, compel the production of documents. Fed. R. Civ. P. 37(a).

The pending motions relate to documents withheld on the basis of attorney-client privilege and the work product doctrine. As a federal court sitting in diversity, the Court applies state substantive law and federal procedural law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1939).

*See also Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *State Farm Fire & Casualty Co. v. Smith*, 907 F.2d 900, 902 (9th Cir. 1990). The attorney-client privilege is governed by substantive state law, while work product is a matter of federal procedural law. *See Lexington Ins. Co. v. Swanson*, 240 F.R.D. 662, 666 (W.D. Wash. 2007).

As discussed below, the Court herein considers attorney-client privilege pursuant to *Cedell v. Farmers Ins. Co. of Washington*, 176 Wash. 2d 686, 295 P.3d 239 (2013). *Cedell* is not applicable to documents withheld as work product. *MKB Constructors v. Am. Zurich Ins. Co.*, No. C13-0611-JLR, 2014 U.S. Dist. LEXIS 78883 at *23-27 (W.D. Wash. May 27, 2014). The work product doctrine is governed by Federal Rule of Civil Procedure 26(b)(3) and applicable federal case law. *Id*. *Accord Barge v. State Farm Mut. Auto. Ins. Co.*, No. C16-0249-JLR, 2016 U.S. Dist. LEXIS 155066 at *14-15 (W.D. Wash. Nov. 8, 2016) ("Although the attorney-client privilege is a substantive evidentiary privilege, the work product doctrine is a procedural immunity governed by [Rule] 26(b)(3).") (cited sources omitted). The party seeking to shield discovery bears the burden of persuading the Court attorney-client privilege or the work product doctrine applies. *See* Fed. R. Civ. P. 26(c); *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

A.  <u>Attorney-Client Privilege</u>

The attorney-client privilege serves the purpose of encouraging "full and frank communication between attorneys and their clients and thereby promot[ing] broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures. *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992).

The Court considers attorney-client privilege in a first-party bad faith insurance claim

pursuant to *Cedell*. As explained in that case:

> A first party bad faith claim arises from the fact that the insurer has a quasi-fiduciary duty to act in good faith toward its insured. The insured needs access to the insurer's file maintained for the insured in order to discover facts to support a claim of bad faith. Implicit in an insurance company's handling of a claim is litigation or the threat of litigation that involves the advice of counsel. To permit a blanket privilege in insurance bad faith claims because of the participation of lawyers hired or employed by insurers would unreasonably obstruct discovery of meritorious claims and conceal unwarranted practices.

295 P.3d at 244-45 (internal citations omitted). *Cedell* sets forth the framework for determining whether the attorney-client privilege applies, while the procedural aspects of the *Cedell* determination continue to be construed pursuant to federal law. *See MKB Constructors*, 2014 U.S. Dist. LEXIS 78883 at *12-23.

The Court starts with the presumption the attorney-client privilege is unavailable or "generally not relevant." *Cedell*, 295 P.3d at 246. An insurer may overcome *Cedell's* "presumption of discoverability by showing its attorney was not engaged in the quasi-fiduciary tasks of investigating and evaluating or processing the claim, but instead in providing the insurer with counsel as to its own potential liability; for example, whether or not coverage exists under the law." *Id*. Even if the presumption of discoverability is overcome, an insured may pierce attorney-client privilege by showing "'a reasonable person would have a reasonable belief that an act of bad faith has occurred,'" and demonstrating "'a foundation to permit a claim of bad faith [tantamount to civil fraud] to proceed.'" *MKB Constructors*, 2014 U.S. Dist. LEXIS 78883 at *18 (quoting *Cedell*, 295, P.3d at 246-47). However, neither a mere allegation or claim of bad faith, nor an honest disagreement as to coverage between the insurer and insured, suffices to waive attorney-client privilege. *Id.* at *16 and *MKB Constructors v. Am. Zurich Ins. Co.*, No. C13-0611-

JLR, 2014 U.S. Dist. LEXIS 102759 at *20 (W.D. Wash. July 28, 2014).

In making a *Cedell* determination, a federal court may exercise its discretion to conduct an *in camera* review. *MKB Constructors*, 2014 U.S. Dist. LEXIS 78883 *19-20. The court may alternatively adopt an equally or more appropriate procedure or mechanism, such as through review of a "privilege log, affidavit, declaration, or in any other manner permissible in federal court." *Id*. at *20-23.

B. <u>Work Product Doctrine</u>

The work product doctrine shelters the mental processes of attorneys. Its application avoids the "'[i]nefficiency, unfairness and sharp practices'" that would otherwise "'inevitably develop in the giving of legal advice and in the preparation of cases for trial[,]'" demoralizing the legal profession and poorly serving the interests of clients and the cause of justice. *Upjohn Co.*, 449 U.S. at 398-99 (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)). The work product rule provides a qualified protection for "documents and tangible things" prepared in anticipation of litigation. *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3) and *Upjohn Co.*, 449 U.S. at 401).

As stated above, the Court applies federal law in determining the applicability of the work product doctrine. A party may not ordinarily discover documents prepared in anticipation of litigation unless the party shows "substantial need" for the materials and the inability to obtain the equivalent by other means. Fed. R. Civ. P. 26(b)(3)(A)(ii).

Even when a court orders disclosure of work product, "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Such materials, known as "opinion" work product, represent the "core types of work product" the doctrine was designed to

ORDER
PAGE - 7

protect. *Republic of Ecuador v. Mackay*, 742 F.3d 860, 869 n.3 (9th Cir. 2014). While an insured may be able to obtain opinion work product in a bad faith insurance action, this requires a "'showing beyond the substantial need/undue hardship test required . . . for non-opinion work product.'" *Barge*, 2016 U.S. Dist. LEXIS 155066 at *15-16 (citing *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992)). The insured must demonstrate the "'mental impressions are *at issue* and their need for the material is compelling.'" *Id*. (italics in *Holmgren*). "At a minimum, compelling need requires that the information sought is not available elsewhere or through the testimony of another witness." *Id*. at *16.[1]

C.    Documents Withheld from Discovery by Foremost

Foremost does not deny Lether engaged in quasi-fiduciary tasks. It maintains it produced all "'investigative' type communications" between Lether and Foremost as to any tasks arguably falling in the quasi-fiduciary category, while excluding: (1) documents related to Lether's legal advice and counsel as to Foremost's potential liability as to whether coverage exists under Washington law, and whether Foremost had any liability pursuant to plaintiff's IFCA claims, and (2) documents prepared specifically in anticipation of litigation. (Dkt. 16 at 17-18.) Foremost contends its privilege logs suffice to establish the attorney-client privilege applies (*see* Dkt. 18-1

---

[1] Plaintiffs cite to cases predating this Court's analysis of *Cedell* in *MKB Constructors* for the proposition that the *Cedell* inquiry eliminates the need for a "substantial need" analysis under Rule 26(b)(3). (*See* Dkt. 16 at 7-8 (citing *Phila. Indem. Ins. Co. v. Olympia Early Learning Ctr.,* No. C12-5759-RBL, 2013 U.S. Dist. LEXIS 93067 at *18-19 (W.D. Wash. Jul. 2, 2013), and *Lynch v. Safeco Ins. Co. of Am.*, No. C13-654-BAT, 2014 U.S. Dist. LEXIS 189110 at *14 (W.D. Wash. Mar. 7, 2014).) *MKB Constructors* and subsequent cases made clear that "*Cedell* is not applicable to assertions of work product protection in federal court[,]" and that the Court continues to consider whether a party seeking work product makes the sufficient "showing of either 'substantial' or 'compelling' need sufficient to justify the production" of work product. 2014 U.S. Dist. LEXIS 78883 at *28-29. Even if discoverable under *Cedell*, documents may still be properly withheld with a showing they are protected work product under Rule 26(b)(3). *Id.* *27 n.6 and *Johnson v. Allstate Prop. & Cas. Ins. Co.*, No. C 14-5064-KLS, 2014 U.S. Dist. LEXIS 121342 at *7 (W.D. Wash. Aug. 29, 2014).

ORDER
PAGE - 8

(Exs. B & C)), and that plaintiffs fail to make the necessary showing of bad faith. Foremost alternatively requests an *in camera* review.

Foremost also relies on the privilege logs to establish the protection of the work product doctrine. It argues plaintiffs' threat of filing an IFCA claim on February 12, 2016 serves as the work product cut-off date, as Foremost then reasonably anticipated litigation was forthcoming. (Dkt. 17 (Exs. 6 & 7).) Foremost identifies documents prepared in anticipation of litigation as including those related to Lether's correspondence with Foremost regarding responses to plaintiffs' IFCA notices and claims, legal demands, and this litigation, Foremost's subrogation efforts, and draft pleadings prepared after plaintiffs filed suit. (Dkt. 16 at 21 and Dkt. 18-1 (Exs. B & C).) Foremost also submits that three pages of documents sought by plaintiffs were properly withheld based on relevancy given that they consist of a pleading in a wholly unrelated case, inadvertently included in the Lether file. (*Id.*)

Plaintiffs argue defendants fail to overcome the presumption the withheld documents are not privileged, that *Cedell* applies to documents generated after litigation began, and assert a factual foundation allowing a reasonable person to conclude an act of bad faith occurred. Plaintiffs reject the applicability of the work product doctrine given their substantial need for documents relating to the handling of their claims in this bad faith case. They also assert the discoverability of Lether's mental impressions, including coverage advice, because they are directly at issue and intertwined with the quasi-fiduciary duties of claim investigation and evaluation. Plaintiffs deny any need for an *in camera* review, while alternatively requesting the Court exercise its discretion to conduct such a review should it deem additional evidence necessary.

As argued by Foremost, this Court considers the role played or activities of an attorney in determining whether or not documents are properly withheld based on attorney-client privilege in

a first-party bad faith insurance claim. *See Anderson v. Country Mut. Ins. Co.*, No. C14-0048-JLR, 2014 U.S. Dist. LEXIS 118400 at *8-11 (W.D. Wash. Aug. 25, 2014); *Lynch v. Safeco Ins. Co. of Am.*, No. C13-654-BAT, 2014 U.S. Dist. LEXIS 189110 at *8-9 (W.D. Wash. Mar. 7, 2014) ("[T]he attorney's job title is not dispositive; rather, the Court must look to the activities of the insurer's attorney."). *See also Cedell*, 295 P.3d at 246 (allowing insurer to overcome presumption of discoverability by showing attorney was providing counsel as to liability and not engaged in quasi-fiduciary tasks of investigation and evaluation or claim processing). Where acting as a "de facto claims handler," an attorney's communications likely will not be privileged. *Anderson*, 2014 U.S. Dist. LEXIS 118400 at *6. However, where "clearly acting as coverage counsel and advising the insurer of its potential for liability, the communications will likely be privileged." *Id.* at *7. "[A]s a general matter, there will likely be no privilege for a lawyer investigating facts to reach a coverage decision, but there likely will be a privilege for a lawyer giving an insurer strictly legal advice about potential liability that could result from a coverage decision or some other course of action." *Id.* at *7-11 (privilege did not apply to communications relating to claims handling, such as conducting an EUO, making factual assessments and determinations, or being the direct point of contact with the insured, but insurer overcame *Cedell* presumption where documents revealed communications involving only coverage or other legal advice). *See also Lear v. IDS Prop. Casualty Ins. Co.*, No. C14-1040-RAJ, 2016 U.S. Dist. LEXIS 69988 at *3-4 (W.D. Wash. May 27, 2016) ("'In the insurance context, the question of whether a communication falls within the attorney-client privilege can often be a difficult one because of the investigatory nature of the insurance business. The line between what constitutes claim handling and the rendition of legal advice is often more cloudy than crystalline. . . . [T]o the extent that an attorney acts as a claims adjuster, claims process supervisor, or claims investigation monitor, and not as a legal advisor, the

ORDER
PAGE - 10

attorney-client privilege does not apply.'") (quoted case omitted); *MKB Constructors*, 2014 U.S. Dist. LEXIS 102759 at *6-7 (engaging in discussions with claims adjustors about investigation is not the same as engaging in task of investigating claim; "There is no evidence [counsel] took sworn statements, conducted any interviews, or had any contact with MKB.").

Here, to the extent the privilege logs explicitly reflect the involvement of Lether,[2] the Court has no difficulty in finding an *in camera* review both warranted and necessary. Foremost avers the Lether attorneys held a dual role involving both claims handling and legal advice. The descriptions on the privilege logs, standing alone, do not allow for a conclusion as to whether the withheld documents involved strictly the provision of coverage counsel or other legal advice, and no quasi-fiduciary tasks undertaken in investigating, evaluating, and processing plaintiffs' claim.

Nor is the Court persuaded the majority of the remaining documents at issue are properly subject to or withheld from production without an *in camera* review. This case is distinguishable from cases in which insurers provided both a privilege log and affidavits or declarations from counsel to establish one or more attorneys did not engage in any quasi-fiduciary tasks, and the court found no *in camera* review necessary. *See*, *e.g.*, *Cedar Grove Composting, Inc. v. Ironshore Specialty Ins. Co.*, No. C14-1443-RAJ, 2015 U.S. Dist. LEXIS 171576 at *22-24 (W.D. Wash. Dec. 23, 2015) (plaintiff's reliance on "conjecture" the attorney "must have been involved" in allegedly bad faith acts did not suffice to compel production); *Indus. Sys. & Fabrication v. W. Nat'l Assur. Co.*, No. 14-0046-RMP, 2014 U.S. Dist. LEXIS 154021 at *5-7 (E.D. Wash. Oct. 30, 2014). Because Foremost did not provide affidavits or declarations from *any* of the individuals identified on the privilege logs, the Court lacks complete information as to the roles undertaken.

---

[2] This would involve, at the least, any privilege log entries identified as involving communications with "Lether," "Tom Lether, "EUO counsel," or Lether attorney "CJ Carroll." (Dkt. 18-1 (Exs. A-C).)

ORDER
PAGE - 11

(*See also* Dkt. 16 at 14 and Dkt. 17, Ex. 5 (relating to Foremost's internal coverage investigation).)

The parties in this case also present starkly different positions as to the bad faith claim. In asserting a foundation to permit a bad faith claim tantamount to civil fraud, plaintiffs assert Foremost unreasonably disregarded significant evidence damage occurred after November 2, 2015, denied coverage due to alleged misrepresentations that were neither intentional, nor material and reaffirmed the denial without further analysis even after plaintiffs identified errors in the decision to deny, and unreasonably relied almost entirely on the statements of a former tenant who ran illegal drug operations out of and squatted in the house. Foremost denies these allegations set forth the necessary foundation to compel the production of privileged documents, and maintains the documents relate to a coverage disagreement in the face of direct evidence contradicting plaintiffs' claim, including the evidence of the Allstate coverage cancellation, tenants' statements, and plaintiffs' sworn testimony.

The Court declines at this juncture to offer any opinion as to the potential for merit, or lack thereof, in plaintiffs' allegation of bad faith. The Court instead finds it prudent to exercise its discretion to undertake an *in camera* review of the documents withheld from production based on attorney-client privilege. *See, e.g.*, *MKB Constructors*, 2014 U.S. Dist. LEXIS 102759 at *25; *Lynch*, 2014 U.S. Dist. LEXIS 189110 at *17-18. The Court further finds, with the exception of the documents outlined below, an *in camera* review appropriate with respect to documents that may be protected as work product, even if discoverable under *Lether*. *See supra* n.1.[3]

Foremost meets its burden of demonstrating it properly withheld a limited number of documents. The Lether privilege log identifies a "Removal Pleading in another lawsuit (*Crowthers*

---

[3] Foremost also asserted the attorney-client privilege for every document withheld as work product. (*See* Dkt. 18-1 (Exs. B & C).)

*v. The Travelers Ins. Co.*)", withheld based on relevancy. (Dkt. 18-1 at 25 (Ex. C) (LETHER 3331-33).) Plaintiffs do not address this apparently unrelated pleading and do not otherwise contest the failure to produce documents withheld based solely on relevancy. Given the absence of any indication this pleading is relevant, the Court finds no basis to compel its production.

The Lether privilege log also lists "Claims Diary Notes re: Subrogation" withheld based on relevancy. (*Id.* at 25.) Foremost states that the same documents were redacted in its claims file, but that plaintiffs herein seek only the production of these documents from the Lether file. (*See* Dkt. 16 at 3, 21; Dkt. 18-1 at 19, 25 (Exs. B & C) (CLAIMS 866-67, 881-82, 1016-17, 1025-28 and LETHER 2913-15, 2943-45, 3216-18).) Again, plaintiffs do not specifically address these documents. "[S]ubrogation activity anticipates litigation through its very purpose – recovering insurance payments from responsible third parties, often through litigation or the threat of litigation." *MKB Constructors*, 2014 U.S. Dist. LEXIS 78883 at *28. The Court finds the privilege logs sufficient to support Foremost's burden and no basis for compelling the production of the subrogation documents. *See id.* at *28-29 (party did not show the "'substantial' or 'compelling' need sufficient to justify production" of redactions relating to communications with subrogation counsel). *See also Linder v. Great N. Ins. Co.*, No. C15-5002-RBL, 2016 U.S. Dist. LEXIS 23289 at *6-7 (W.D. Wash. Feb. 25, 2016).

The Court likewise finds Foremost's burden met and no basis for compelling production of draft pleadings contained in the Lether file. The privilege log describes these documents as a "Draft Notice of Appearance" and "Draft Notice of Removal (not filed by Lether & Associates)," both dated in October 2016 and withheld on the basis of "Attorney Client/Work Product." (Dkt. 18-1 at 25 (Ex. C) (LETHER 3278-80, 3292-3306, 3309, 3317-30).) The description of these documents supports the conclusion they were prepared in anticipation of litigation, and plaintiffs

ORDER
PAGE - 13

do not set forth a substantial or compelling need for their production.

The Court, in sum, concludes Foremost properly withheld from production the documents identified above, but reserves a ruling on whether the remaining documents are protected by attorney-client privilege and/or the work product doctrine. Foremost must submit the latter documents to the Court for an *in camera* review.

## CONCLUSION

Foremost's motion for a protective order (Dkt. 16) is GRANTED in part and plaintiffs' motion to compel (*id.*) is DENIED in part, and the documents identified above need not be produced. The Court reserves a ruling on the motions with respect to the remaining documents at issue and ORDERS Foremost to submit those documents to the Court, on or before **April 7, 2017**, for an *in camera* review. The LCR 37 Joint Submission (Dkt. 16) is RENOTED for consideration as of **April 7, 2017**.

DATED this 24th day of March, 2017.

Mary Alice Theiler
United States Magistrate Judge

ORDER
PAGE - 14